# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ANTONIO SHROPSHIRE,

    *Plaintiff,*

  v.

HOME BOX OFFICE, INC., *et al.,*

    *Defendants.*

Case No. 25-cv-2342-ABA

## MEMORANDUM OPINION

Defendants Home Box Office, Inc. and HBO Service Corporation (together, "HBO") depicted Plaintiff Antonio Shropshire in the television series "We Own This City," based on a book written by journalist Justin Fenton about the Baltimore Police Department's Gun Trace Task Force ("GTTF"). Mr. Shropshire objects to his portrayal in the series and has sued HBO. He contends it is defamatory and that HBO infringed copyrighted material from his own memoir concerning encounters with the GTTF. Defendants have moved to dismiss, arguing that the statute of limitations has run on Mr. Shropshire's defamation claim, and that as to his copyright infringement claim, insofar as the television series contained facts that also appear in Mr. Shropshire's book, "facts are not copyrightable." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). For the reasons below, the Court will grant Defendants' motion and dismiss this case.

1

## I.     BACKGROUND[1]

In 2016, Mr. Shropshire was arrested during a police raid of his girlfriend's home. ECF No. 17 ¶ 8. The officers who participated in the raid included at least one member of the GTTF, then-Sergeant Keith Gladstone, who was later convicted of conspiracy to deprive civil rights. *Id.* ¶ 12; *United States v. Keith Allen Gladstone*, Case No. 19-cr-94-SAG, ECF No. 33 (D. Md. July 13, 2022). Mr. Shropshire himself was convicted after a 2017 trial and sentenced to 300 months in federal custody. ECF No. 17 ¶ 4; *see also United States v. Antonio Shropshire*, Case No. 16-cr-51-SAG, ECF No. 353 (D. Md. Mar. 1, 2018). Mr. Shropshire, who represents himself in this lawsuit against HBO, remains incarcerated. *Id.* ¶ 3.

In 2021, Mr. Shropshire "self-published" a memoir titled "The Real Shropshire Organization" (the "memoir"). *Id.* ¶ 11. He alleges he had completed it earlier, in 2020, but did not "publish" it until 2021. *Id.* Also in 2021, journalist Justin Fenton published his book, titled "We Own This City," documenting the activities and investigation of the GTTF (the "Fenton book"). *Id.* ¶ 9. HBO adapted the Fenton book into a limited television series, and broadcasted it in 2022 (the "series" or the "show"). *Id.* ¶ 13. The series primarily follows former BPD sergeant Wayne Jenkins, showing in multiple parallel timelines his gradual corruption, his leadership of the GTTF, and the investigations into the GTTF and BPD that eventually led to him and several other officers being convicted and incarcerated. ECF No. 22-3 (flash drive exhibit on file with

---

[1] Because the case is at the pleading stage, the Court assumes the truth of Mr. Hernandez's allegations. *See Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, 997 F.3d 149, 154—55 (4th Cir. 2021).

Court). HBO has provided a copy of both books and the series as physical exhibits to its reply in support of the motion to dismiss. ECF No. 22-2, 22-3.[2]

Mr. Shropshire initiated this case in July 2025, ECF No. 1, and filed the operative amended complaint in September 2025, ECF No. 17. His complaint asserts three claims: defamation, copyright infringement, and negligence. *Id.* ¶¶ 50–69. He seeks compensatory and punitive damages, as well as a public retraction. *Id.* ¶ 70.

As to the defamation claims, Mr. Shropshire contends that the show includes false statements portraying him as "supplying fatal narcotics to overdose victims"; "being involved in fictional criminal schemes such as robbery of drug dealers alongside Baltimore cops"; and "participating in conduct that would seriously harm his reputation in both the public and prison community." *Id.* ¶¶ 50–57. His negligence claims are similar, alleging that HBO "attribut[ed] false and damaging statements to Plaintiff, including portraying him as cooperating with law enforcement, selling deadly drugs to overdose victims, and being linked to violent or sensationalized conduct never supported by trial records." *Id.* ¶ 66.

Regarding his copyright claims, Mr. Shropshire alleges that there were five incidents of improper copying: (1) HBO copied the memoir's "original descriptions of heroin, including color" and "reference to yellow heroin" by referring in the series to

---

[2] Mr. Shropshire has moved to strike Defendants' submission of the Fenton book (ECF No. 22-2), contending that it is not "integral" to the complaint and thus should not be considered at the pleadings stage. ECF No. 25. Mr. Shropshire does not appear to object to consideration of his memoir and the television series at this stage. In any event, consideration of these works is proper as they are the alleged original and infringing works, and thus integral to the complaint. *See Copeland v. Bieber*, 789 F.3d 484, 490 (4th Cir. 2015) (considering all works at issue in a copyright case at the pleading stage). The Court will reserve ruling on Mr. Shropshire's motion to strike, however, because no aspect of the analysis below relies upon the facts as presented in the Fenton book.

narcotics Mr. Shropshire sold as "bumblebee bags"; (2) HBO copied the memoir's "unique narrative context" of an instance in which an individual complained about narcotics Mr. Shropshire sold and returned them, leading to Mr. Shropshire's arrest while still possessing the drugs that the customer returned; (3) HBO copied, "with only superficial changes," a snippet of dialogue described in the memoir in which Mr. Shropshire was asked about calling his fiancée during his arrest; (4) HBO "adapted" a portion of internal monologue from the memoir concerning Mr. Shropshire potentially offering Mr. Gladstone a bribe, creating a scene in which Mr. Shropshire *did* offer Mr. Gladstone a bribe; and (5) HBO copied a "tripartite structure" about Mr. Gladstone's mentorship of Mr. Jenkins from the memoir and used it for a "chronological and thematic arrangement" of a scene in the series. *Id.* ¶¶ 26–47.

HBO moved to dismiss all claims, contending that the defamation claims were untimely, that the negligence claims were duplicative of the defamation claims, and that Mr. Shropshire lacked a copyright registration, a necessary prerequisite for filing an infringement lawsuit. ECF No. 18-1; *see also* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made."). In his opposition to the motion to dismiss, Mr. Shropshire contends that his defamation claims are timely due to the discovery rule and attached a certificate of registration for his memoir dated June 18, 2025—one month before he originally filed suit. ECF No. 20. As for his negligence claim, Mr. Shropshire "does not oppose dismissal of Count III (negligence)." ECF No. 20 at 1 n.1. In reply, HBO contends that Mr. Shropshire was attempting to impermissibly amend his pleadings via a brief in opposition by attaching the registration. ECF No. 22 at 7. HBO further argued that the copyright claims should be

4

dismissed even if a registration was filed because the only material that was alleged to have been copied contained historical facts, which are not copyrightable. *Id*. at 10–12, 22.[3]

As explained above, Mr. Shropshire also moved to strike the Fenton book as an exhibit. ECF No. 25.

## II.    STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Mr. Shropshire is self-represented, so the Court must construe his complaint liberally, holding it to "less stringent standards than [those] drafted by lawyers." *See*

---

[3] Copyrightability was not the focus of Defendants' motion to dismiss, but they did preserve the argument. ECF No. 18-1 at 7 n.5. And Mr. Shropshire addressed the issue in his opposition. ECF No. 20 at 6.

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But "liberal construction of a pro se plaintiff's pleading does not require the court to ignore clear defects in pleading." *Chrisp v. Univ. of N.C.-Chapel Hill*, 471 F. Supp. 3d 713, 716 (M.D.N.C. 2020).

## III.    DISCUSSION

### A.    Copyright infringement

"To establish a claim for copyright infringement, a plaintiff must prove [1] that it owned a valid copyright and [2] that the defendant copied the original elements of that copyright." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 537 (4th Cir. 2015) (quoting *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001)). As explained above, Defendants argue that Mr. Shropshire's complaint fails to establish either element. First, they contend that Mr. Shropshire failed to sufficiently allege that he had registered a copyright in his memoir. Second, they contend that any copied material was historical fact, so the complaint fails to plead infringement as a matter of law. The Court will reserve ruling on the registration issue because, even assuming that Mr. Shropshire did register a copyright prior to filing suit, he has failed to allege that HBO copied protected, original elements of his memoir.

To state the second element of a copyright claim, a complaint must allege not only that the defendant in fact copied some aspect of the plaintiff's work, but that the copying was improper—i.e., that there is "substantial similarity" between the infringing work and the protected elements of the copyrighted work under both an "extrinsic" and "intrinsic" test. *See Copeland*, 789 F.3d at 488. The extrinsic test is objective, "looking to specific and 'external criteria' of substantial similarity between the original elements (and only the original elements) of a protected work and an alleged copy," while the

6

intrinsic test "is a subjective inquiry that centers on the impressions of a work's 'intended audience,' usually the general public." *Id.* at 488–89 (quoting *Universal Furniture Int'l, Inc., v. Collezione Europa USA, Inc.*, 618 F.3d 417, 435–36 (4th Cir. 2010) and *Lyons*, 243 F.3d at 801). In *Copeland*, the Fourth Circuit explained that a court "may grant a motion to dismiss . . . under the extrinsic prong alone[,]" 789 F.3d at 490 n.1, but explicitly reserved on the question of whether a complaint may be dismissed at the pleading stage on the intrinsic prong only. *Id.* at 490.[4] Under the objective test, "[s]imilarity only as to *unprotected* aspects of a work does not result in liability for copyright infringement." *Corbello v. Valli*, 974 F.3d 965, 974 (9th Cir. 2020) (emphasis added). Thus, a complaint that only alleges theft of non-copyrightable elements fails as a matter of law. *See Macher v. Netflix, Inc.*, 684 F. Supp. 3d 509, 515 (W.D. Va. 2023) (dismissing a copyright case because the plaintiff's allegations were insufficient to establish "that [the defendant] copied protected aspects of his book"); *Comins v. Discovery Commc'ns, Inc.*, 200 F. Supp. 2d 512, 519 (D. Md. 2002) ("The Court concludes as a matter of law that virtually all of the similarities between the Book and the Film that [Plaintiff] is alleging involve non-protectable elements.").

As is particularly relevant here, one such category of unprotectable material is facts. An author cannot copyright facts or ideas. *See Feist Publications,* 499 U.S. at 345 ("The most fundamental axiom of copyright law is that no author may copyright his ideas or the facts he narrates.") (quotations and alterations omitted). Thus, non-fiction works receive only "thin" copyright protection: the facts themselves are not

---

[4] Other circuits prohibit district courts from dismissing under the intrinsic prong because it involves subjective questions of fact. *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018) ("[T]he intrinsic test is reserved exclusively for the trier of fact.").

copyrightable, but the author's choices in how to express those facts can be. In applying the objective test to material that includes historical facts, "[t]he ultimate task is to separate the 'facts or ideas set forth in a work,' which are not protected, from the 'author's manner of expressing those facts and ideas,' which is protected." *Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 266–67 (4th Cir. 2019) (quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015)); *see also Comins*, 200 F. Supp. 2d at 519 ("The protection afforded works recounting historical facts or events has been described as 'thin;' *i.e.,* less robust than that accorded original works of a fictional nature.").

As outlined above, Mr. Shropshire alleges that HBO improperly appropriated five elements of his memoir. But none of these elements were protectable by copyright.

First, regarding the "bumblebee bags," Mr. Shropshire contends that in his memoir, he "explains how drug addicts would call him looking for yellow-colored heroin" and that "he discovered that the yellow heroin was coming out of his neighborhood." *Id*. ¶ 27. He contends that "Defendants took his reference to yellow heroin and turned it into 'bumblebee bags' in the show." *Id*. ¶ 28. Even assuming that Defendants did so, Mr. Shropshire is not entitled to copyright protection regarding the fact that there was yellow heroin in his neighborhood. And Mr. Shropshire does not allege that the specific expression used in the show, "bumblebee bags," was actually copied from the memoir in any event.

Second, Mr. Shropshire contends that HBO took a plot device related to a customer returning drugs. In his memoir, Mr. Shropshire contends that he possessed drugs at the time of his arrest because "someone returned drugs to him due to dissatisfaction with its quality." *Id*. ¶ 29. He contends that, in the show, the Shropshire

8

character gives the same rationale for having drugs in his pocket when arrested. *Id.* ¶ 31. Mr. Shropshire does not contend that the series quotes dialogue from the memoir verbatim, but instead that it uses a "core narrative scenario" and "expressive content" that "closely mirror" his "original storytelling choice." *Id.* ¶ 32. Mr. Shropshire's complaint and his memoir do not present this as an "original storytelling choice," however, but rather as something that actually happened. *See* ECF No. 17 ¶ 29–30; ECF No. 22-1 at 6. Because the complaint only alleges that Defendants copied and represented a true factual event, rather than any original aspects of the expression of that event, this allegation cannot support a copyright infringement claim. *See Comins*, 200 F. Supp. 2d at 519 ("Historical . . . events, of course, are not protected by copyright.").

Mr. Shropshire's third allegation of improper copying relates to the dramatization of his arrest. He notes that, in both his memoir and the show, the officer who arrested him asked if he wanted to call his fiancée, and then knew her phone number before Mr. Shropshire was finished relating it (showing that the officers had a wiretap on Mr. Shropshire's phone). ECF No. 17 ¶¶ 35–37. The complaint provides three brief lines of dialogue from the memoir and states that they were copied "nearly verbatim" in the show. *Id.* ¶ 37. Mr. Shropshire also contends that Defendants copied the "rhythm, sequencing, tone, and emotional impact—particularly [the officer] asking the Plaintiff if he wanted to call his fiancée." *Id.* But again, Mr. Shropshire holds this scene out in his memoir as actually happening. *See* ECF No. 22-1 at 7–8. Authors are not entitled to copyright protection for dialogue or scenes that they present as historical fact. *See Crane v. Poetic Prods. Ltd.*, 593 F. Supp. 2d 585, 594 (S.D.N.Y.), *aff'd*, 351 F. App'x 516 (2d Cir. 2009) ("[S]tatements [that] are presented as *actual* quotations by

9

real people . . . are . . . historical facts that are not protectable by copyright.").

Fourth, the complaint states that the show improperly copied a scene from the memoir involving Mr. Gladstone's search of Mr. Shropshire's girlfriend's house. ECF No. 17 ¶¶ 38–42. The memoir notes that Mr. Gladstone "appeared overly familiar" during the search, and that Mr. Shropshire "suspected corruption throughout the encounter, and "briefly [thought] about offering Gladstone a bribe." *Id.* ¶ 39. This scene is recreated in the show. In the show's version, however, the Shropshire character *does* offer Gladstone a bribe, which he accepts. *Id.* ¶ 42. Mr. Shropshire alleges that "[t]his portrayal is entirely fictional and never occurred." *Id.* He appears to conflate his copyright and defamation allegations as to this incident, stating that Defendants "defamed his character through a knowingly false portrayal." *Id.* This alleged copying is again not sufficient to state a claim for copyright infringement. Mr. Gladstone's search of Mr. Shropshire's house did in fact happen, and based on Mr. Shropshire's own allegations the aspect that was allegedly fictionalized—Mr. Shropshire offering the bribe—is *different* in the show. Thus, Mr. Shropshire cannot rely on this scene to allege that Defendants copied it and reproduced an improperly similar version of its protected elements sufficient to support a claim of copyright infringement.

Finally, Mr. Shropshire's alleged "tripartite structure" is not protectable either. He contends that, on two pages of his memoir, he presents an "original narrative structure" that connects (1) Mr. Gladstone's corruption, (2) his "mentorship of Wayne Jenkins," and (3) the "eventual use of BB guns to cover up police violence." ECF No. 17 ¶ 43. Mr. Shropshire then contends that in dialogue from a two-minute scene in the television series, law enforcement officers connect the dots between these three events in a similar way. *Id.* ¶ 45. Though Mr. Shropshire concedes that "each individual fact

10

may exist in public records," he alleges that the scene constitutes "a direct lift of Plaintiff's narrative flow and expressive framing." *Id.* ¶ 46. Mr. Shropshire does not contend that any dialogue was copied. And Mr. Shropshire's use of the word "structure" is somewhat misleading. Mr. Shropshire has not alleged, for example, that the show itself structured its organization of the GTTF story in the same way that he organized his memoir, in whole or in part. Although such copying can give rise to an infringement claim even in the context of the "thin" protection afforded non-fiction works if their organization bears "at least some minimal degree of creativity," *see Feist*, 499 U.S. at 345–46, 349, that is not what is alleged here. Instead, Mr. Shropshire alleges that characters in a scene from the show connect three historical events, and that Defendants copied the insight that these events were connected from his memoir. But these events and their connection are matters of historical fact, according both to Mr. Shropshire's memoir and the public record. Mr. Shropshire represented as historical facts in his memoir that Mr. Gladstone *was* corrupt, that he *did* mentor Mr. Jenkins, and that the two officers *did* plant the BB gun as part of that mentorship. Even if it was Mr. Shropshire's original discovery that these events were connected, such factual discoveries or insights are not protected by copyright. *See Comins*, 200 F. Supp. 2d at 519 ("[A] historical interpretation, even if it originated with the plaintiff, is not protected by copyright and 'can be freely used by subsequent authors.'") (quoting *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 978 (2d Cir. 1980)).

In summary, even construing Mr. Shropshire's pleadings liberally, the copyright claim fails as a matter of law because he has not alleged that HBO copied any aspect of his memoir that is actually protected by copyright.

11

### B.    Defamation and Negligence

Having dismissed Mr. Shropshire's federal copyright claims, that leaves two claims under Maryland state law for defamation and negligence. Federal courts may hear certain state claims related to federal claims via supplemental jurisdiction. 28 U.S.C. § 1367(a). But a district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "[A] district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001); *see also Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, 948 F. Supp. 2d 525, 537 (D. Md. 2013), *aff'd*, 593 F. App'x 204 (4th Cir. 2014) ("[S]upplemental jurisdiction is a doctrine of discretion, and not a plaintiff's right."). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Morales v. Richardson*, 841 F. Supp. 2d 908, 914 (D. Md. 2012), *aff'd*, 475 F. App'x 894 (4th Cir. 2012); *see also Gregory v. Otac, Inc.*, 247 F. Supp. 2d 764, 773 (D. Md. 2003) ("A majority of the courts which have considered the question have declined to exercise pendent jurisdiction over a state claim when the federal claims have been disposed of prior to a full trial on the merits."); 13D *Wright & Miller's Federal Practice & Procedure* § 3567.3 (3d ed. rev. 2026) ("As a general matter, a court will decline supplemental jurisdiction if the underlying claims are dismissed before trial.").

Here, the proceedings are at an early stage, well before trial. The parties have not invested significant resources in litigating the case. Considering principles of fairness,

judicial economy, and comity, this Court will decline to exercise supplemental jurisdiction over Mr. Shropshire's state law claims.

## IV.   CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to dismiss. The Court's dismissal of all claims is without prejudice. A separate order follows.

Date:  July 28, 2026

_____/s/_____

Adam B. Abelson
United States District Judge